**ARNOLD M. DIAMOND, INC., Appellant,**

v.

**John H. DALTON, Secretary of the Navy, Appellee.**

No. 93–1436.

United States Court of Appeals, Federal Circuit.

Decided May 26, 1994.

Rehearing Denied July 7, 1994.

Christopher M. Houlihan, Roemer and Feathertonhaugh, P.C., New York City, for appellant.

John P. Sholar, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director and Anthony H. Anikeeff, Asst. Director. Also on the brief was John D. Tew, Trial Atty., Office of Gen. Counsel, Dept. of the Navy, Washington, DC, of counsel.

Before ARCHER, Chief Judge, COWEN, Senior Circuit Judge, and NIES, Circuit Judge.*

COWEN, Senior Circuit Judge.

Arnold M. Diamond, Inc. (Diamond or contractor) appeals the May 11, 1993, decision of the Armed Services Board of Contract Appeals (ASBCA or Board), which denied Diamond's motion for reconsideration and affirmed the Board's earlier decision of December 31, 1992, granting the government's motion to dismiss for lack of subject matter jurisdiction. *In re Arnold M. Diamond,* *Inc.,* 1992 WL 398328, *on motion for reconsideration,* 1993 WL 170133. The ASBCA determined that Diamond's submission of its subcontractor's claim did not comply with the certification requirements of the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 605(c)(1) (1988). We *reverse and remand.*

## BACKGROUND [1]

On December 11, 1984, the Navy awarded a contract to Diamond for the renovation and extension of Pier No. 2 at the Naval Weapons Station, Earle, Colts Neck, New Jersey. The purpose of the contract was to provide berthing improvements, including the construction of mooring platforms and connecting catwalks, in order to provide access to Navy vessels. A portion of the work was performed by Diamond's subcontractor, Perth Amboy Ironworks (PAI).

On February 26, 1986, the Army Corps of Engineers awarded a contract to Gulf Coast Trailing Co. (GC). The contract called for maintenance dredging of a shipping channel in Sandy Hook Bay, New Jersey. The dredging was performed for the benefit of the Navy. On March 15 and 16, 1986, while GC was performing its contract, two of its barges collided with Pier 2, causing extensive damage to areas that constituted improvements made by Diamond and its subcontractor, and to areas of the pier that existed before the Navy contract.

Between April 15, 1986, and September 5, 1986, there was an exchange of letters between Diamond and the Navy in which Diamond asserted that because GC was performing a contract for the benefit of the Navy when the collisions occurred, the government was responsible for the damage. The Navy replied that the government was not responsible for the damage and directed Diamond to repair the damaged pier or risk termination of its contract. Diamond complied with the Navy's order, but informed the Navy that its order constituted a change in

* Circuit Judge Nies served as Chief Judge when this case was argued but vacated the position of Chief Judge on March 17, 1994. Chief Judge Archer assumed the position of Chief Judge on March 18, 1994.

1. Except as otherwise stated hereinafter, the facts set forth in this opinion are substantially the same as the Board's findings. We agree with the underlying facts found by the Board, but not with the conclusions it has drawn from its findings.

the contract and that a claim would be submitted for the costs incurred as a result of the change.

On November 7, 1986, PAI, the subcontractor, submitted its claim to Diamond, which forwarded the claim to the contracting officer on November 14, 1986, with a cover letter stating "[t]he data is forwarded without review or comment." The Navy returned the claim to the contractor with information regarding the CDA certification requirements.

On January 13, 1987, Diamond sent PAI a complete technical and legal analysis of PAI's claim of $1,902,570. Diamond concluded that on PAI's claim of $170,488.85 for direct costs, PAI was entitled to recover only $44,000. Diamond disputed PAI's right to recover anything on the remaining items on the grounds that (1) there was no factual support for the items claimed, or (2) PAI sought reimbursement for claimed expenses that were not allowable under the terms of the contract. Diamond also marked most of the statement PAI submitted in support of its claim with the notation "do not concur." In the letter, Diamond also advised PAI of the certification requirements of the CDA, and sent PAI some educational material pertaining to the subject of procurement fraud investigations.

PAI responded by letter of January 21, 1987, which stated in part, that "if we followed your directive to certify exactly as quoted by the [Navy] you would in effect be directing PAI to commit perjury."

On February 9, 1987, Diamond submitted to the contracting officer its own certified claim in the amount of $572,437.73, for costs incurred as a result of the March 1986 collisions. Diamond stated that it reserved the right to submit PAI's claim arising out of the same circumstances.

On March 9, 1987, Diamond submitted to the Navy PAI's claim of $1,902,570, with a cover letter stating that the claim was submitted because Diamond was obligated to honor the request of its subcontractor, but that the claim was submitted "without comment, verification, or markup."

On March 23, 1987, the Navy returned Diamond's own claim because it contained a reservation and was, therefore, not for a sum certain. PAI's claim was also returned on the ground that it was not accompanied by Diamond's certification as required by the CDA.

In October 1988, PAI initiated proceedings under Chapter 11 of the Bankruptcy Act in the United States Bankruptcy Court for the District of New Jersey. In that proceeding, Diamond filed a motion for summary judgment on October 3, 1988, requesting that the PAI's claim be deemed abandoned unless it submitted a proper CDA certification. On October 28, 1988, the Bankruptcy Court directed PAI to certify in accordance with the CDA "so much of its purported claim as it can properly justify and support." PAI's president signed a properly worded certification on October 28, 1988, and returned it to Diamond without any supporting data. Diamond then wrote PAI stating that its claim was in the same amount as the November 1986 claim. Diamond also referred to the order of the Bankruptcy Court and requested PAI to respond to Diamond's analysis of the claim and provide documentation that would justify and support it. Failing to receive the requested documentation, Diamond again moved the Bankruptcy Court on May 23, 1989 to enter a judgment declaring that the subcontractor's purported claim be abandoned or, in the alternative, for an order requiring PAI to justify and support its claim within 15 days.

After a hearing on June 12, 1989, the Bankruptcy Court entered an order of June 23, 1989 denying Diamond's motion, and ordering Diamond to certify and sponsor PAI's claim in the amount of $1,902,570 and to submit it to the Navy with Diamond's own claim. In the course of the hearing, the bankruptcy judge stated: "I'm satisfied that on the basis of the review of the statute and the pleadings it appears to me there is a basis, a good faith basis for certifying the claim and I'm going to order and direct Diamond to do so."

On July 19, 1989, Diamond complied with the order of the Bankruptcy Court by resubmitting its own claim along with PAI's claim,

which was properly certified by Diamond. The claim was accompanied by a letter addressed to the contracting officer, stating that Diamond's certification of the subcontractor's portion of the claim was made in accordance with and at the direction and order of the Bankruptcy Court, a copy of which was attached.

The claim, totalling $3,177,821, included (a) $539,575 for Diamond's own basic claim; (b) $2,303,333.99 for PAI's basic claim with Diamond's markups; (c) $40,859.22 for Diamond's estimated cost to borrow funds to cover alleged improper liquidated damages; and (d) $294,052.53 for Diamond's estimated cost to borrow funds to cover the amount of its claim and its markup on the PAI claim. It also sought a time extension of 324 days.

On March 13, 1990, the contracting officer issued a decision denying the claim, but he granted a time extension of eleven days. Diamond's timely appeal to the Board was denied in its initial and reconsideration decisions which, after finding that Diamond's certification did not comply with the CDA, held that the Board lacked subject matter jurisdiction.

## DISCUSSION

### I

Once again, the court is called upon to resolve a dispute involving a contractor's compliance with the certification requirements of the CDA. In 1992, Congress amended the CDA to provide that a defect in a claim certification is not jurisdictional. See Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 907, 1992 U.S.C.C.A.N. (106 Stat.) 4506, 4518–19 (amending 41 U.S.C. § 605(c)). However, Diamond had appealed to the Board before the change in the law and therefore its claim is not subject to the amended act.

### II

The Contract Disputes Act of 1978, 41 U.S.C. § 605(c)(1), requires that all claims over $50,000, including the contractor's own claims and those of its subcontractor, must be certified by and in the name of the prime contractor. This indirect system of appealing on behalf of the subcontractor is referred to as a sponsorship appeal. In enacting this provision, Congress believed that under the sponsorship system, the prime contractor would be required to review and manage the claims of the subcontractor in order to prevent fraudulent or frivolous claims by the subcontractor. See S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17 (1978), reprinted in 1978 U.S.C.C.A.N. 5235, 5250–51. The report stated:

> If direct access were allowed to all Government subcontractors, contracting officers might, without appropriate safeguards, be presented with numerous frivolous claims that the prime contractor would not have sponsored.

Id. at 16, 1978 U.S.C.C.A.N. at 5250. The Board's findings of fact demonstrate that Diamond complied fully with the congressional mandate to review and manage the claim of its subcontractor. Ironically, however, the data that Diamond developed in its analysis of PAI's claim, as well as Diamond's representations to the Bankruptcy Court, were used by the Government in persuading the Board to dismiss Diamond's appeal. The Board concluded that Diamond did not consider that there was good ground[2] for the claim it had submitted in behalf of its subcontractor and consequently, that the claim was not submitted in good faith.

### III

The Board held that Diamond's reliance on the order of the Bankruptcy Court to show that Diamond acted in good faith in certify-

---

2. We recognize that in United States v. Turner Construction Co., 827 F.2d 1554, 1561 (Fed.Cir. 1987), this court held that while the certification provision does not require the prime contractor to believe that the subcontractor is entitled to recover on the claim, it is necessary that the prime believe that there is good ground for the subcontractor's claim. However, that case is factually distinguishable, because in Turner, unlike the situation in this case, the prime contractor was not required by a court of competent jurisdiction to certify the subcontractor's claim in spite of the prime's belief that there was not good ground for most of the amount claimed by the subcontractor.

ing the subcontractor's claim was misplaced. The Board accorded no effect to the order of the court, declaring that it was "violative of a statute within our province."

■ We review de novo the Board's conclusions of law. *United States v. DeKonty Corp.*, 922 F.2d 826, 827 (Fed.Cir.1991). Whether or not the Board has jurisdiction is a question of law. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed. Cir.1992).

■ We think the Board erred in declining to give any weight to Diamond's compliance with the Bankruptcy's Court's order in deciding the issue of Diamond's good faith. The Bankruptcy Court has broad powers under 11 U.S.C. § 105(a) to issue any order "necessary or appropriate to carry out the provisions of this title." *See In re G.S.F. Corp.*, 938 F.2d 1467, 1475 n. 6 (1st Cir.1991) (regarding the extent of the court's authority). The weight of authority holds that section 105(a) empowers bankruptcy courts to enter civil contempt orders. *See Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 (10th Cir.1990); *Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.)*, 84 B.R. 377, 385–88 (Bankr.E.D.Pa.1988), *aff'd*, 96 B.R. 29 (E.D.Pa.), *aff'd without opinion*, 879 F.2d 856 (3d Cir.), *cert. denied*, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989).

The Bankruptcy Court had jurisdiction of the subject matter because PAI's claim against the government was an asset of the bankrupt's estate and the court had jurisdiction to issue any order deemed necessary to protect that asset. *See First Commercial Bank v. B.T. Wilson Drywall Constr., Inc. (In re B.T. Wilson Drywall Constr., Inc.)*, 36 B.R. 439, 442 (E.D.Ark.1983). Clearly, the court had personal jurisdiction over PAI and Diamond because PAI was in Chapter 11 Bankruptcy, and because Diamond invoked the court's jurisdiction by filing a motion for summary judgment in the Bankruptcy Court.

■ In light of the order of the Bankruptcy Court, we now consider whether Diamond acted in good faith. The term "good faith" is not defined in the CDA. Therefore, we resort to the common law definition, which is

well expressed in *People v. Nunn*, 46 Cal.2d 460, 296 P.2d 813, 818 (Cal.App.), *cert. denied*, 352 U.S. 883, 77 S.Ct. 126, 1 L.Ed.2d 82 (1956):

> The phrase "good faith" in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.

It is clear from the record in this case that Diamond had no intention either to defraud or deceive the Navy. To the contrary, the Board's findings of fact show that in its direct dealing with PAI and in the Bankruptcy Court, Diamond took every measure that could reasonably have been expected of a prime contractor, under the circumstances, to obtain PAI's support and justification for its claim in an amount which Diamond felt it could conscientiously certify. Alternatively, Diamond petitioned the Bankruptcy Court to relieve Diamond of its obligation to certify PAI's claim. Instead of obtaining the relief it sought, Diamond was ordered to certify the claim by the Bankruptcy Court. Diamond complied with the order and notified the contracting officer that it had certified the claim because it was required to do so by order of the Bankruptcy Court. When one contrasts the Board's conclusion of law with its findings of fact, the question that arises is: "What other course could a reasonable contractor have taken in the circumstances to show that it acted in good faith?" Significantly, the Board in its opinion stated: "We agree that appellant's actions, for the most part, demonstrate a conscientious effort to meet its ethical, contractual, and statutory obligations." Nevertheless, the Board held that Diamond had not acted in good faith.

This court agrees with Diamond's contention that it acted in the reasonable belief that there was no viable alternative to the course of action it followed in this case. First, Diamond's efforts to file its own properly certified claim came to naught. Second, Diamond was obligated both by section 605(c)(1) of the CDA and the Order of the Bankruptcy Court to certify the subcontractor's claim. If it had refused to do so, Diamond would have

exposed itself to a suit for damages by PAI without any right of reimbursement.[3] · Third, there was a possibility that if it had disobeyed the order of the Bankruptcy Court, Diamond would have been cited by that court for civil contempt.

## CONCLUSION

After reviewing the undisputed but unusual facts in this case, we find that Diamond's actions represented a good faith effort to comply with the obligations with which it was confronted. We conclude, therefore, that the Board erred as a matter of law in deciding that Diamond did not comply with the "good faith" requirement of the CDA and in dismissing the appeal for lack of subject matter jurisdiction. Accordingly, the Board's decision is reversed and the case is remanded to the Board for a determination of the merits of the combined claim.

## COSTS

Diamond may recover its costs.

*REVERSED AND REMANDED.*

---

**3.** *See, e.g.,* W. Noel Keyes, Government Contracts under the Federal Acquisition Regulation § 33.26 (West 1986) ("[A] prime contractor may decide not to certify a subcontractor's claim because of its lack of value or its inability to meet statutory standards. But, the prime contractor may then be subject to a suit in a state court, and, if he loses, he may then have to pay the subcontractor without being reimbursed.").