**LARRY D. BARNES, INC. (doing business as Tri–Ad Constructors), Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5020.

United States Court of Appeals, Federal Circuit.

Aug. 14, 2002.

**908**

Before MAYER, Chief Judge, LOURIE, and LINN, Circuit Judges.

LINN, Circuit Judge.

Larry D. Barnes, Inc., doing business as Tri–Ad Constructors (hereinafter "Tri–Ad"), appeals the decision of the Court of Federal Claims denying Tri–Ad's claim for equitable adjustment of a contract for the replacement of underground water lines. Tri–Ad further appeals the grant of the

government's counterclaims pursuant to the Contract Disputes Act ("CDA") Anti–Fraud provision and the False Claims Act. Because Tri–Ad has demonstrated no errors of law or clearly erroneous factual findings, we *affirm.*

## DISCUSSION

Tri–Ad argues that the Court of Federal Claims erroneously rejected Tri–Ad's interpretation of the contract as unreasonable, erroneously credited the government's affirmative defense under the Special Plea in Fraud, and erroneously awarded damages pursuant to the government's counterclaims under the CDA Anti–Fraud provision and the False Claims Act. We address each of Tri–Ad's contentions in turn.

### A.  Contract Interpretation

Tri–Ad argues that the Court of Federal Claims erred in its finding that Tri–Ad's construction of the contract was unreasonable.  Tri–Ad argues that the bid solicitation represented that the contractor would encounter only 100 underground utility obstructions. According to Tri–Ad, the solicitation included an estimated quantity of 100 for line items 36 and 37, the only line items mentioning use of a backhoe, which was required for use in excavating near the underground obstructions.  Tri–Ad further argues that, based upon the number of obstructions and the government's obligation to mark each obstruction, it reasonably assumed that it could use a trenching machine capable of excavating 800 linear feet per day.

The interpretation of a contract is a question of law to be decided by the court.  *B.D. Click Co. v. United States,* 222 Ct.Cl. 290, 614 F.2d 748, 752 (Ct.Cl. 1980).  It is a cardinal rule of contract construction that the joint intent of the

parties is dominant if it can be ascertained. *See United States v. Bethlehem Steel Co.,* 205 U.S. 105, 119, 27 S.Ct. 450, 51 L.Ed. 731 (1907); *J.W. Bateson Co. v. United States,* 196 Ct.Cl. 531, 450 F.2d 896, 902 (Ct.Cl.1971). If some substantive provision of a government-drawn agreement is fairly susceptible of a certain construction and the contractor actually and reasonably so construes it, in the course of bidding or performance, that is the interpretation which will be adopted—unless the parties' intention is otherwise affirmatively revealed. *WPC Enters., Inc. v. United States,* 163 Ct.Cl. 1, 323 F.2d 874, 876 (Ct.Cl.1963); *Peter Kiewit Sons' Co. v. United States,* 109 Ct.Cl. 390, 418 (1947). It is well settled that where a contractor seeks recovery based on his interpretation of an ambiguous contract, he must show that he relied on this interpretation in submitting his bid. *See Edward R. Marden Corp. v. United States,* 803 F.2d 701, 705 (Fed.Cir.1986); *Dale Ingram, Inc. v. United States,* 201 Ct.Cl. 56, 475 F.2d 1177, 1185 (Ct.Cl.1973).

Tri–Ad contends that the parties' contemporaneous understanding comported with its interpretation, because the government agreed to modifications of the contract under which Tri–Ad was compensated for several hundred underground obstructions under line item 36. Tri–Ad argues that these modifications did not fully compensate for the negative effect on Tri–Ad's overall productivity caused by the underground obstructions, including a so-called "ripple effect." For example, Tri–Ad argues that it intended to use a trencher on the project, but was forced to switch to a less-efficient backhoe after running into significantly more obstructions than Tri–Ad expected to encounter. Tri–Ad claims the government owes it further compensation for loss of productivity under the theories of constructive change, differing site conditions, and variation of estimated quantities ("VEQ").

The Court of Federal Claims found no support for Tri–Ad's contentions that it bid this contract expecting to encounter only 100 underground obstructions and expecting to excavate 800 linear feet per day. *Larry D. Barnes, Inc. v. United States,* No. 98–668C, slip op. at 3–4 (Fed.Cl. Aug. 31, 2000). The Court of Federal Claims noted evidence indicating that Tri–Ad was not surprised when it encountered fifty underground obstructions during the first two and a half months of a twelve-month contract. *Id.* at 4. Other evidence indicated that Tri–Ad's estimate at bid time was 630 feet per day, using "3 2 men crews" averaging 210 feet per day (i.e., using backhoes rather than a trenching machine). *Id.* at 3.

The Court of Federal Claims found that, had Tri–Ad attended the pre-bid site inspection attended by other bidders, it would have known to expect much more than 100 underground obstructions. *Id.* at 4. The 1000 meter boxes estimated in the contract provided another indication that many more than 100 underground obstructions would be encountered. *Id.* at 5.

We agree with the Court of Federal Claims that Tri–Ad's interpretation of the contract, including only 100 underground obstructions and permitting use of a trenching machine capable of excavating 800 feet per day, was unreasonable. Beyond the indications noted by the Court of Federal Claims that Tri–Ad did not in fact interpret the solicitation at bid time as they now contend, the contract documents and other information available to a reasonable bidder at bid time do not support Tri–Ad's asserted interpretation.

Under the contract's Site Investigation clause, Tri–Ad was charged with the knowledge available at the pre-bid site in-

spection. The Site Investigation clause states,

> The Contractor ... acknowledges that it has satisfied itself as to the character, quality, and quantity of surface and subsurface materials or obstacles to be encountered insofar as this information is reasonably ascertainable from an inspection of the site ... as well as from drawings and specifications made a part of this contract. Any failure of the Contractor to take the actions described and acknowledged in this paragraph will not relieve the Contractor from responsibility for estimating properly the difficulty and cost of successfully performing the work ...

FAR § 52.236–3(a). Tri–Ad's vice president stated at trial that he was familiar with this clause, but Tri–Ad chose not to attend the pre-bid site visit or conduct a separate site inspection because it would have been "useless."

"It is well-settled that a contractor is charged with knowledge of the conditions that a pre-bid site visit would have revealed." *H.B. Mac, Inc. v. United States,* 153 F.3d 1338, 1346 (Fed.Cir.1998). At the pre-bid site inspection, the bidders toured the project areas to be excavated, including residential areas likely to have many underground obstructions. Far from being useless, a site visit would have shown a reasonable and prudent contractor that the project area included residential and commercial areas, and thus would have indicated many more than 100 underground obstructions.

The contract included estimates for equipment in amounts that are inconsistent with Tri–Ad's alleged interpretation of the contract. The solicitation estimated that the contractor would be required to provide 60,000 linear feet of 1″ copper pipe and 1,000 1″ meter box, valve, and meter sets. In combination with the site inspec-

tion tour through residential areas, these estimates indicate that excavation would occur in highly developed areas that, because they were highly developed, were likely to have many underground obstructions. As the Court of Federal Claims noted, Tri–Ad's allegation that in spite of other contract provisions it interpreted line items 36 and 37 to indicate only 100 underground obstructions is not credible.

Other provisions of the contract show that Tri–Ad's contract interpretation was unreasonable. Line items for providing water pipe of various sizes were described in the solicitation as including "[e]xcavation of pipe trench," while line items 36 and 37 are each described as "[m]iscellaneous excavation with a backhoe not in other line items." Tri–Ad's argument that only line items 36 and 37 permit excavation using a backhoe is untenable, because the contract language does not forbid use of a backhoe in other line items. As our predecessor court stated,

> Defendant's interpretation violates one of the cardinal principles of contract interpretation, that an interpretation which gives reasonable meaning to all parts of an instrument is preferred to one which leaves a portion of it useless, inoperative, void, meaningless, or superfluous.

*Blake Constr. Co. v. United States,* 220 Ct.Cl. 56, 597 F.2d 1357, 1359 (Ct.Cl.1979). Thus, Tri–Ad's interpretation ignoring provisions of the contract other than line items 36 and 37 is unreasonable.

■ To prevail on its claim for differing site conditions, Tri–Ad must prove that "[t]he conditions actually encountered must have been reasonably unforeseeable based on all the information available to the contractor at the time of bidding." *Stuyvesant Dredging Co. v. United States,* 834 F.2d 1576, 1581 (Fed.Cir.1987). A number of underground obstructions in ex-

cess of 100 was not only reasonably foreseeable in light of the information provided in the solicitation and during the pre-bid site inspection; it should have been expected by a reasonable and prudent contractor. We can find no error in the Court of Federal Claims' resolution of Tri–Ad's claims of constructive change and differing site conditions.

We decline to address Tri–Ad's VEQ claim. Tri–Ad improperly raises its particular VEQ arguments for the first time on appeal. Moreover, its arguments start from the premise that Tri–Ad's interpretation of the contract was reasonable. Because we have found this premise to be incorrect, further discussion is unnecessary.

■ The government argues that Tri–Ad's claims were discharged by accord and satisfaction, because the parties entered into contract modifications under which Tri–Ad was specifically compensated for all of the underground obstructions Tri–Ad encountered. Each of the contract modifications included the following clause:

> This contract modification constitutes a full discharge, accord and satisfaction, release of any and all claims, actual or constructive, legal, equitable, known or unknown, which the government or contractor may have against the other arising out of conditions of modification [e.g., P00003], including field and office overhead, insurance and employee taxes.

Tri–Ad admits that it negotiated and agreed to contract modifications, including the above language, for the individual obstructions. However, Tri–Ad argues that the contract modifications compensated only for the obstructions, not for the additional cost of switching from the trenching machine to the less productive backhoe, and thus the accord and satisfaction language does not preclude recovery on its present claims.

"Accord and satisfaction denotes one of the recognized methods of discharging and terminating an existing right and constitutes a perfect defense in an action for the enforcement of a previous claim, whether that claim was well founded or not." *Chesapeake & Potomac Tel. Co. of Va. v. United States,* 228 Ct.Cl. 101, 654 F.2d 711, 716 (Ct.Cl.1981). Tri–Ad argues that the many underground obstructions caused its loss of productivity, yet Tri–Ad admits that it has been compensated for each of the obstructions. Despite the accord and satisfaction clause, Tri–Ad contends that the modifications were somehow limited in scope to specific obstruction costs, leaving open the possibility of further compensation for consequent loss of productivity.

The language of the accord and satisfaction clause does not permit such a limited reading. This language puts the parties on notice that each modification "constitutes a full discharge ... of any and all claims ... arising out of conditions of" the modification. We find that Tri–Ad's "loss of productivity" due to use of a backhoe is exactly the sort of claim "arising out of conditions of" the modifications that the accord and satisfaction clause was intended to discharge. If Tri–Ad was entitled to claim additional compensation, the time to make such a claim was during negotiations for the underground obstructions. We find no error in the conclusion of the Court of Federal Claims that Tri–Ad's claims for loss of productivity are barred by accord and satisfaction.

## B. Fraud

The Court of Federal Claims found that Tri–Ad had, in asserting its claims, violated three statutes: (1) the Forfeiture of False Claims Act, 28 U.S.C. § 2514; (2) the Contract Disputes Act Anti–Fraud

provision, 41 U.S.C. § 604; and (3) the False Claims Act, 31 U.S.C. § 3729. Tri–Ad disputes the applicability of each of these statutes. We review the trial court's findings with respect to each statute individually, because liability under one statute does not automatically trigger liability under the others. *See Miller v. United States*, 213 Ct.Cl. 59, 550 F.2d 17, 22–23 (Ct.Cl.1977) (negligence and ineptitude are not "practicing a fraud," but they do establish liability under the False Claims Act); *Little v. United States*, 138 Ct.Cl. 773, 152 F.Supp. 84, 87–88 (Ct.Cl.1957) (claimant practiced fraud and thus forfeited claim, but was not liable under the False Claims Act); *Young–Montenay v. United States*, No. 90–3862C, 1993 WL 721993, at *4 (Fed.Cl. Jan.6, 1993) (claimant liable under the False Claims Act but not under the CDA Anti–Fraud provision).

### 1. Special Plea in Fraud

■ The government argued, and the Court of Federal Claims found, that Tri–Ad's claims were forfeited pursuant to 28 U.S.C. § 2514. The Court of Federal Claims found that Tri–Ad violated § 2514 by submitting several inconsistent explanations for its "added costs," persisting in attempts to justify a false claim, and attempting to claim government liability for expenditures unrelated to the contract.

The Forfeiture of False Claims Act, reads:

A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof. In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514 (2000). To prevail, the government must prove its allegations by clear and convincing evidence. *UMC Elecs. Co. v. United States*, 249 F.3d 1337, 1339 (Fed.Cir.2001).

The level of intent required for liability under § 2514 is knowingly presenting the government with a false claim for the purpose of getting paid for the claim. *See Commercial Contractors, Inc. v. United States*, 154 F.3d 1357, 1362 (Fed.Cir.1998); *UMC Elecs.*, 249 F.3d at 1339–40. Negligence and ineptitude do not invoke liability under § 2514. *See Miller*, 550 F.2d at 22.

Inconsistencies, even if the discrepancy is large, do not rise to the level of fraud if there is a reasonable explanation for them. *See McCarthy v. United States*, 229 Ct.Cl. 361, 670 F.2d 996, 1004 (Ct.Cl.1982). In the absence of credible evidence of intent to defraud, e.g., falsified cost estimates, the court will find no violation of § 2514. *See id.* at 1005; *see also O'Brien Gear & Mach. Co. v. United States*, 219 Ct.Cl. 187, 591 F.2d 666, 672 (Ct.Cl.1979) (liability under § 2514 found where inconsistencies resulting from false and forged records demonstrated "deliberate, knowing intent to deceive the court into making a decision favorable to the plaintiff").

In this case, Tri–Ad's Vice–President testified that he knew lost profits on deleted work were not recoverable, but he "let it ride" because "all of these monies have been [due] for so long I'm going to invoice you for them in hopes that you'll pay some of it." He admitted that even after being advised by counsel that he could not recover lost profits on deleted work, Tri–Ad pressed its claim in the Court of Federal Claims and took no steps to amend its claim to remove the unrecoverable amount.

Tri–Ad submitted a certified claim to the contracting officer for over $1.3 million in "added costs." The Defense Contract Audit Agency ("DCAA") found this claim to

be meritless, and asked Tri–Ad for additional documentation. Tri–Ad offered a series of different explanations to the contracting officer, the DCAA, and to the trial court for this claim, and amended the amount requested to $808,000. Although significant variations in costs do not necessarily indicate fraud if there is a reasonable explanation, *see McCarthy,* 670 F.2d at 1004, we can find no reasonable explanation by Tri–Ad for the variations. Instead, Tri–Ad offered testimony explaining that it could have submitted a claim of significantly greater amount, but it did not want to take advantage of the government's "stupid mistakes."

Tri–Ad's certified claim included amounts related to an alleged work stoppage caused by the government. Tri–Ad claimed labor and equipment costs for forty-five days during which Tri–Ad allegedly shut down operations on the contract. However, Tri–Ad's own records showed that Tri–Ad employees were working on each of the days of the alleged work stoppage.

Tri–Ad's certified claim included amounts for knowingly unrecoverable lost profits, a non-existent work stoppage, and "added costs" for which no reasonable explanation has been provided. The evidence of Tri–Ad's intent in asserting this claim venture beyond negligence and ineptitude to credible evidence of intent to defraud. We agree with the Court of Federal Claims that Tri–Ad's claims are barred under the Special Plea in Fraud.

### 2. Contract Disputes Act Anti–Fraud provision

■ The CDA Anti–Fraud provision states:

If a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the

part of the contractor, he shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim. Liability under this subsection shall be determined within six years of the commission of such misrepresentation of fact or fraud.

41 U.S.C. § 604 (2000).

Misrepresentation of fact is "a false statement of substantive fact, or any conduct which leads to a belief of a substantive fact material to proper understanding of the matter in hand, made with intent to deceive or mislead." 41 U.S.C. § 601(7) (2000). Congress enacted this provision to reduce "baseless claims [that] contribute to the so-called horsetrading theory where an amount beyond that which can be legitimately claimed is submitted merely as a negotiating tactic." S.Rep. No. 95–1118, at 20, *reprinted in* 1978 U.S.C.C.A.N. 5235, 5254. A violation of the CDA must be proved by a preponderance of the evidence. *UMC Elecs.,* 249 F.3d at 1338.

In determining whether the contractor intended to deceive or mislead the government under § 604, the focus is on the contractor's knowledge at the time the claim is submitted. *See Commercial Contractors,* 154 F.3d at 1362. To establish liability, the government must show that the contractor made false or fraudulent statements in its submitted claim with an intent to deceive or mislead the government. *See id.* A contractor will not be liable if it certifies a claim in the face of a court order to do so, or if it takes reasonable steps to verify the claim, thus showing that it did not intend to defraud the government. *See Arnold M. Diamond, Inc. v. Dalton,* 25 F.3d 1006, 1010 (Fed.Cir.1994).

In its certified claim, Tri–Ad asserted that the government owed $1,365,892.59 in

"added costs" due to "[l]oss of production." To support this claim, Tri–Ad offered a series of different explanations. For example, Tri–Ad's officers testified concerning a mysterious "ripple effect" caused by Tri–Ad's inability to use a trenching machine to perform excavation work. At trial and before this Court, Tri–Ad offered yet another explanation, that the "added costs" represented the costs of performing all excavation according to the unit prices for line item 37, which yielded $808,096.30.

Line item 37 as presented in the solicitation included "excavation ... not in other line items." Each of the line item descriptions for providing pipe of various sizes include excavation costs. The parties negotiated additional compensation due to the underground obstructions Tri–Ad encountered during excavation. There is simply no basis for such double-, and arguably triple-, counting of the trench volume excavated by Tri–Ad for purposes of its claims for compensation.

The differing explanations for "added costs" demonstrate that Tri–Ad misrepresented the basis of this portion of its certified claim. Tri–Ad admitted at trial that "added costs" did not refer to costs Tri–Ad actually incurred, but instead represented the hypothetical revenue Tri–Ad could have made if the trenching machine were used to excavate the maximum amount of linear feet under this contract.

As noted earlier, Tri–Ad also claimed lost profit on deleted work, a claim Tri–Ad pressed well after its executives had been advised by counsel that lost profit on deleted work was not recoverable. Tri–Ad's conduct is devoid of any reasonable attempt to verify its claim or other conduct showing that it did not intend to defraud the government. *See Arnold M. Diamond,* 25 F.3d at 1010. Tri–Ad deliberately pressed its claim, before the contracting officer, the Court of Federal Claims, and

this Court, knowing it was baseless and unsupportable.

Under § 604, Tri–Ad is also liable for the cost of reviewing the claim, which the trial court correctly granted the government.

### 3. False Claims Act

The pertinent section of the False Claims Act reads:

(a) Liability for certain acts.—Any person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

(b) Knowing and knowingly defined.— For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information—

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information,

and no proof of specific intent to defraud is required.

31 U.S.C. § 3729 (2000). The government must prove a violation of the False Claims Act by a preponderance of the evidence. *UMC Elecs.,* 249 F.3d at 1338. Our interpretation of the required mental state has mirrored § 3729(b). *See Commercial Contractors,* 154 F.3d at 1362 ("For purposes of the FCA, the contractor is deemed to have known that a claim it submitted was false if it had actual knowledge of the falsity of the claim or if it

acted in deliberate ignorance or reckless disregard of the truth or falsity of the claim.").

In this case, Tri–Ad asserted that it expected to use a trenching machine on the project rather than a backhoe. In a November 9, 1993 letter to the Contracting Officer, Tri–Ad stated that it expected to average 630 feet per day. The evidence at trial included handwritten notes indicating that Tri–Ad expected to use 3 two-man backhoe crews that would average 630 feet per day. Based on this evidence, the trial court found that Tri–Ad had planned on using a backhoe instead of a trenching machine to excavate. Tri–Ad has not demonstrated that the court's finding was clearly erroneous.

We agree with the Court of Federal Claims that Tri–Ad's conduct satisfies the intent requirements of § 3729. Tri–Ad failed to verify its claim after being put on notice by the DCAA that several items were unfounded. Rather than verify its claim, Tri–Ad refused to document the added costs, stating that "job-cost accounting is not warranted." In failing to verify and document its claim and continuing to press those portions found to be unrecoverable, the evidence of Tri–Ad's conduct, at the very least, shows reckless disregard of the truth, triggering liability under § 3729. *See* 31 U.S.C. § 3729(b)(3) (2000). We affirm the Court of Federal Claims' decision to impose liability under the False Claims Act.

## CONCLUSION

Because Tri–Ad has demonstrated no errors of law or clearly erroneous factual findings, we *affirm*.