**UMC ELECTRONICS CO.,**
**Plaintiff–Appellant,**

**v.**

**UNITED STATES, Defendant–Appellee.**

No. 00–5046.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 14, 2001.

James S. Phillips, Williams, Mullen, Clark & Dobbins, of McLean, VA, argued for plaintiff-appellant. With him on the brief were James S. Delsordo and Francis E. Purcell, Jr.

Judith Rabinowitz, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were David M. Cohen and Michael F. Hertz, Directors; and Robert M. Hollis and Stephen D. Altman, Assistant Directors.

Before MAYER, Chief Judge, CLEVENGER and RADER, Circuit Judges.

MAYER, Chief Judge.

UMC Electronics Company (UMC) appeals the June 23, 1999, judgment of the United States Court of Federal Claims, *UMC Elecs. Co. v. United States*, 43 Fed. Cl. 776, finding UMC liable under the Special Plea in Fraud, 28 U.S.C. § 2514 (1994), the False Claims Act, 31 U.S.C. § 3729 (1994), and the antifraud provision of the Contract Disputes Act, 41 U.S.C. § 604 (1994). We affirm.

## Background

In 1988, the United States Air Force awarded UMC a contract for the procurement of an estimated best quantity of 7,350 NF–2D Floodlight Sets. In accordance with the contract, UMC produced a single floodlight set for design review and testing. The Air Force approved the design on April 3, 1990, and subsequently issued delivery orders. On May 10, 1990, UMC submitted a certified claim (May claim) for an equitable adjustment pursuant to the Disputes clause of the contract. UMC claimed that it had suffered increased costs to perform the contract due to the Air Force's delay in approving the design. UMC submitted an updated claim on September 27, 1990 (September claim) and, after an audit by the Defense Contract Audit Agency (DCAA), it filed an amended claim on June 11, 1992 (June claim). The contracting officer denied the final amended claim. UMC then filed for bankruptcy in the United States Bankruptcy Court for the District of Connecticut and asserted an adversary claim against the government for the equitable adjustment based on the alleged government delay in approving the design. The bankruptcy court dismissed the claim without prejudice and ordered UMC to refile in the Court of Federal Claims.

The government filed counterclaims in the Court of Federal Claims under the Special Plea in Fraud, the False Claims Act and the antifraud provision of the Contract Disputes Act. The court conducted a trial only on the government's counterclaims because of their dispositive nature. The court held that UMC forfeited its claim pursuant to the Special Plea in Fraud. In addition, the court assessed a civil penalty of $10,000 under the False Claims Act, and pursuant to the antifraud provision of the Contract Disputes Act, found UMC liable for $223,500 plus the government's costs of review. UMC appeals.

## Discussion

■ The government must prove a violation of the Contract Disputes Act and False Claims Act by a preponderance of the evidence. *See Commercial Contractors, Inc. v. United States*, 154 F.3d 1357, 1362 (Fed.Cir.1998). Under the Special

Plea in Fraud, the government must prove its allegations by clear and convincing evidence. *Id.* We review the legal conclusions of the Court of Federal Claims *de novo, Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir. 1999), and its factual findings under a clearly erroneous standard, *Anderson v. Bessemer City,* 470 U.S. 564, 573–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The contract between UMC and the Air Force incorporated the Disputes clause from the Federal Acquisition Regulations (FAR), 48 C .F.R. § 52.233–1 (1987). The FAR provides that when claiming an equitable adjustment in excess of $50,000, the contractor must certify that:

> (i) The claim is made in good faith;
>
> (ii) Supporting data are accurate and complete to the best of the Contractor's knowledge and belief; and
>
> (iii) The amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable.

48 C.F.R. § 52.233–1 (1987).

As supporting data for the May claim, UMC included a summary schedule and exhibits. Because production of the floodlight sets had not yet started, UMC noted in its cover letter accompanying the claim that the amount was based on "actual costs incurred" for the single floodlight produced for design review and "projections which are based on our current business forecasts" for estimating costs impacting future production.

Between May and September 1990, UMC began production of the floodlights. In the September claim, it stated that actual, rather than estimated costs were used for calculating the daily unabsorbed fixed burden from April to August 1990. The attached schedule distinguished between "Actual" and "Projected" costs for periods in which UMC had actual cost data. In calculating projected costs for the September claim, UMC used figures from the Producer Price Index for each category of goods ordered. The DCAA audit of the September claim criticized this approach to forecasting costs when factual evidence from sources such as purchase orders is readily available.

The amended June claim expressly stated that it was based on "actual increases experienced" and the attached exhibits identify only "ACTUAL" costs. At the time of submission, UMC possessed 99% of the purchase invoices and had completed delivery of 2,343 of 2,487 floodlight sets ordered. There is no reference to projected costs in the June claim. Although it had the invoices, UMC used its original purchase orders for goods to calculate the actual costs for the June claim.

FAR § 31.001 defines "actual costs" as "amounts determined on the basis of costs incurred, as distinguished from forecasted costs." 48 C.F.R. § 31.001. Albert Devejian, the controller and treasurer for UMC, testified that, in accordance with Generally Accepted Accounting Principles, UMC did not record a material cost in its general ledger until it received a valid invoice. He also testified that UMC measured its "actual costs incurred" as the invoiced costs entered in the general ledger.

UMC argues that it followed DCAA's guidance to use purchase orders when calculating the actual costs for the June claim. However, DCAA's criticism of UMC's methodology and its subsequent recommendation to use purchase orders was in reference to the calculation of projected costs in the September claim, not the calculation of actual costs. UMC possessed 99% of the purchase invoices, only had 144 floodlight sets remaining to deliver, and required only 18 days to complete production. This situation is in marked contrast to that of the September claim when production had only recently begun and purchase orders were the best avail-

able evidence for determining projected costs. The trial court found that UMC knowingly submitted a false or fraudulent claim in which it repeatedly characterized purchase orders as actual costs incurred even though its invoices showed lower actual costs. The court found the difference in material costs between purchase orders and the actual amount invoiced, plus overhead expenses, to total $223,500. 43 Fed. Cl. at 821.

On appeal, UMC argues that the information presented in Schedule 7 of the June claim listed each material item by the purchase order number that was impacted by the alleged delay, and did not conceal the fact that the calculations were based on purchase orders. According to UMC, the column heading "ACTUAL" used in Schedule 7 merely referred to "actual schedule" in contrast to the other column entitled "W/O DELAY." As such, the "ACTUAL" column included all anticipated increases through completion of the current production release and therefore required a cost estimate for the outstanding 144 units. Furthermore, UMC notes that a footnote to Exhibit D of the June claim indicated that the figures were "Based on Actual Costs and estimate to complete units Released to Date."

■ In spite of these arguments, the evidence supports the trial court's conclusion that UMC knowingly submitted a false claim. Exhibit D and the corresponding footnote did not reference Schedule 7 or imply that the term "actual" had a meaning beyond that defined by the FAR. In UMC's May and September claims, it carefully divided its calculations into actual costs and projected costs and based actual costs on invoices. Furthermore, Devejian testified that he was aware of the FAR's definition of the term "actual costs," and he represented in a letter to the contracting officer that the June claim complied with all FAR requirements. The previous claim submissions and Devejian's testimony support the court's finding that UMC was aware of the distinction between actual and projected costs.

The cover letter accompanying the June claim stated that the claim was based on the "actual increases experienced." Devejian repeatedly testified that, regardless of the amount stated in the purchase order, UMC would never make any vendor payments unless invoiced. However, UMC based the June claim on purchase orders, not, as stated in the cover letter, "actual increases experienced." UMC included cost increases based on the maximum price theoretically allowed under escalation clauses in the purchase order agreements even when the vendor chose not to invoice those amounts and even when no invoice was received because the parts were never delivered.

■ UMC's nearly contemporaneous bankruptcy filings present further evidence of fraud. It based its bankruptcy schedule on invoices, not purchase orders, thereby attempting to minimize its alleged vendor debt while maximizing its claim against the government for the same debt. Finally, the court explicitly stated that by the end of trial, UMC's main witness, Devejian, lacked credibility because of his "circuitous, evasive and inconsistent" answers. 43 Fed. Cl. at 799 n. 17. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings." *Anderson*, 470 U.S. at 575, 105 S.Ct. 1504.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims is affirmed.

*AFFIRMED.*