# United States Court of Appeals for the Federal Circuit

2007-5129

DAEWOO ENGINEERING AND CONSTRUCTION CO., LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Thomas P. McLish, Akin Gump Strauss Hauer & Feld LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Thomas C. Goldstein and Paul W. Killian.

Donald E. Kinner, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Jeanne E. Davidson, Director, and J. Reid Prouty, Trial Attorney, and Michal L. Tingle, Assistant Director, Civil Fraud. Of counsel on the brief was Brian S. Smith, Division Counsel, United States Army Corps of Engineers, of Ft. Shafter, Hawaii.

Appealed from: United States Court of Federal Claims

Judge Robert H. Hodges, Jr.

# United States Court of Appeals for the Federal Circuit

2007-5129

DAEWOO ENGINEERING AND CONSTRUCTION CO., LTD.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 02-CV-1914, Senior Judge Robert H. Hodges, Jr.

_____

DECIDED:   February 20, 2009

_____

Before MAYER, FRIEDMAN, and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

Daewoo Engineering and Construction Co., Ltd. ("Daewoo" or "the contractor") brought suit in the Court of Federal Claims, alleging that the United States breached a contract between Daewoo and the United States to build a road in the Republic of Palau.  The United States counterclaimed, alleging violations of the False Claims Act, 31 U.S.C. § 3729, and the Contract Disputes Act, 41 U.S.C. § 604, and seeking forfeiture of Daewoo's claims pursuant to 28 U.S.C. § 2514.  <u>Daewoo Eng'g & Constr. Co. v. United States</u>, 73 Fed. Cl. 547, 597 (2006).  The Court of Federal Claims held that Daewoo had committed fraud.

The court awarded the government $10,000 for Daewoo's False Claims Act violation and $50,629,855.88 for Daewoo's Contract Disputes Act violation. Id. at 597. It also held that Daewoo's claims were forfeited under 28 U.S.C. § 2514. Id. We affirm.

BACKGROUND

In 1998, pursuant to a 1994 treaty between the United States and the Republic of Palau, the United States Army Corps of Engineers ("government") solicited bids for the building of a fifty-three-mile road around the island of Babeldaob in the Republic of Palau. The government estimated that the price of constructing the road would be between $100 million and $250 million. Daewoo initially proposed to build the road for $73 million. Daewoo was the lowest bidder by far, with the next lowest bidder proposing $100 million. After the government questioned this price, Daewoo revised its proposal and submitted a final bid of $88.6 million. On March 30, 1999, the government awarded Daewoo the contract for constructing the road. The contract required completion of the road within 1080 days, a period which began in October 2000.

Construction of the road was subsequently delayed. Daewoo attributed these delays to the humid and rainy weather and moist soils in Palau, and urged the government to reduce the amount of soil compaction required by the contract. After discussing these delays with Daewoo, the government reduced the amount of soil compaction the contract had specified for parts of the road.

On March 29, 2002, Daewoo submitted to the Government a request for equitable adjustment. In this certified claim, Daewoo sought adjustment of the contract price and the time to perform the contract, alleging that the contract used defective specifications, that the government breached its duties to cooperate and to disclose

superior knowledge, and that the contract was impossible to perform within the originally specified time period. Daewoo requested $13,348,793.07 in "additional costs as of December 31, 2001" and, in the government's view, also requested $50,629,855.88 in "costs January 1, 2002 [and] [f]orward," a total of $63,978,648.95 ("$64 million"). Daewoo rejected the government's offer of a bilateral time adjustment, and the contracting officer denied Daewoo's claim in August 2002.

Daewoo filed a complaint with the Court of Federal Claims in December 2002, seeking, "with respect to damages suffered through December 31, 2001," an increase in the "compensable and non-compensable contract performance time" of 8 non-compensable and 122 compensable days and "monetary relief in the amount of $13,348,793.07," and "with respect to damages suffered from January 1, 2002, through contract completion," an increase in the "compensable contract performance time" of 776 days and "monetary relief in the amount of $50,629,855.88." Compl. 19-21. The government counterclaimed for damages, seeking $64 million under the Contract Disputes Act and $10,000 under the False Claims Act. The government also entered a special plea in fraud and sought forfeiture of Daewoo's claims under 28 U.S.C. § 2514.

The Court of Federal Claims awarded the government $10,000 under the False Claims Act and $50,629,855.88 ("$50.6 million") under the Contract Disputes Act, and forfeited Daewoo's claims under § 2514. Daewoo Eng'g, 73 Fed. Cl. at 597. The Court of Federal Claims concluded that the government "showed by clear and convincing evidence that the contractor knowingly presented a false claim with the intention of being paid for it," thus supporting the $50.6 million penalty under the Contract Disputes Act, the $10,000 award under the False Claims Act, and forfeiture of Daewoo's claims.

Id. at 584. Alternatively, the Court of Federal Claims analyzed and rejected on the merits Daewoo's claims that the road construction contract had contained a misleading weather-delay clause and defective road design specifications, that the government breached its duty to disclose its superior knowledge of its weather-delay calculation methods, and that the contract was thus impossible to perform. See id. at 561-68.

Daewoo timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review legal conclusions of the Court of Federal Claims de novo, and we review its factual findings under a clearly erroneous standard. See UMC Electronics Co. v. United States, 249 F.3d 1337, 1339 (Fed. Cir. 2001).

I

Under the antifraud provision of the Contract Disputes Act, 41 U.S.C. § 604, "[i]f a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, he shall be liable to the Government for an amount equal to such unsupported part of the claim." A "misrepresentation of fact" is "a false statement of substantive fact, or any conduct which leads to a belief of a substantive fact material to proper understanding of the matter in hand, made with intent to deceive or mislead." 41 U.S.C. § 601(9). The government must establish this falsity and intent by a preponderance of the evidence. Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 1362 (Fed. Cir. 1998).

The Court of Federal Claims held that Daewoo "filed at least $50 million of the [$64 million certified] claim in bad faith" and consequently assessed a $50.6 million penalty against Daewoo under the Contract Disputes Act. Daewoo Eng'g, 73 Fed. Cl.

at 597.  The $50.6 million portion of the claim found to be fraudulent represented the projected costs of completion of the contract.  Daewoo challenges this assessment on three theories: (1) that Daewoo's certified claim was not a "claim" for $64 million under the Contract Disputes Act; (2) even if it was a claim for that amount, it was not fraudulent; and (3) even if the claim was in part fraudulent, it was not shown to be fraudulent to the extent of $50.6 million.

A.

We first address whether the contractor claimed approximately $64 million under the Contract Disputes Act.

A "claim" under the Contract Disputes Act, 41 U.S.C. §§ 601-13, must be "(1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain."  Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc) (citing FAR 33.201, 48 C.F.R. § 33.201).  Daewoo urges that the $50.6 million in future costs detailed in its certified claim were not sought as a matter of right, but instead were merely estimates provided to encourage the government to adjust the contract specifications.

Both the government and Daewoo agree that claims for future costs are permissible.  Thus, the fact that not all of the costs recited in Daewoo's certified claim had been incurred does not prevent it from being construed as a claim for $64 million, including such projected costs.  See UMC Electronics, 249 F.3d at 1339 (describing a claim including both incurred and projected costs).  The Court of Federal Claims has noted that "a contractor may claim future expenses; however, when a contractor submits a claim that includes future expenses, projected costs should be in good faith."

UMC Electronics Co. v. United States, 43 Fed. Cl. 776, 803 (1999), aff'd, 249 F.3d 1337 (Fed. Cir. 2001).[1]

We think that the construction of Contracts Disputes Act claims should follow the general rules for the construction of written instruments. We note that Daewoo agrees that the claim should be construed using these general rules.

We look first to the plain language of the document, which the government urges is on its face a claim for $64 million and which Daewoo equally forcefully argues is plainly a claim for only $13 million.

Some of the language in the claim document supports the government's argument that the claim was for $64 million in incurred and projected costs. The claim document's "Certification of Request For Equitable Adjustment" stated that "the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable." Certified Claim at 7. The claim stated that "[t]his request for equitable adjustment is separated into past and future impacts," Certified Claim at 55, and that "[Daewoo] is requesting . . . costs applied to" the period after December 2001, Certified Claim at 66. The claim then detailed these post-2001 costs, which included subtotaled costs for Daewoo and/or each of its subcontractors for equipment, overhead, profit, haul road maintenance, erosion control, escalation, vehicles, bonds, insurance, and so on. Certified Claim at 67-88. The claim stated that the "Total Costs January 1,

---

[1] We have held that the Contract Disputes Act permits interest to be awarded on a contractor's projected costs before the contractor actually incurs such claimed costs. See Caldera v. J.S. Alberici Constr. Co., 153 F.3d 1381, 1382-83 (Fed. Cir. 1998).

2002 & Forward" were $50,629,855.88 and that the "Grand Total Past and Future Costs" was $63,978,648.95. Certified Claim at 89.

On the other hand, some of the claim document's language favors Daewoo's argument that the claim was only for $13 million in incurred costs. For example, the Executive Summary of the claim document referenced only the $13 million incurred costs. Certified Claim at 8. The claim document later advised that "estimates of <u>future</u> cost and time impacts anticipated to be incurred . . . are provided as a guide to the Government for considering alternate specifications." Certified Claim at 51. The Memorandum portion of the claim concluded that "Daewoo expressly reserves it[s] right to seek damages subsequently incurred." Certified Claim at 50.

We conclude that, standing alone, the claim document is unclear. Under such circumstances, its meaning is a factual question.[2] The Court of Federal Claims here made a factual finding that Daewoo made a claim for the full $64 million. That finding is not clearly erroneous.

---

[2] See <u>Beta Sys., Inc. v. United States</u>, 838 F.2d 1179, 1183 (Fed. Cir. 1988) ("The question of interpretation of language and conduct—the question of what is the meaning that should be given by a court to the words of a contract, is a question of fact, not a question of law." (quoting 3 Arthur Linton Corbin, <u>Corbin on Contracts</u> § 554 (1960))); 11 Richard A. Lord, <u>Williston on Contracts</u> § 30:7 (4th ed. 1999) ("Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions . . . .").

Where the meaning of a written instrument is unclear, courts look to extrinsic evidence to resolve the question.[3] The extrinsic evidence unquestionably supports the Court of Federal Claims' factual finding that the contractor intended to make a claim for $64 million, the full amount of the pre-2002 and post-2001 costs. In its complaint filed in the Court of Federal Claims, Daewoo stated that its March 29, 2002, claim "requested damages for the added costs incurred from October 13, 2000, through December 31, 2001, in the amount of $13,348,793.07 and for the added costs incurred and to be incurred after December 31, 2001, in the amount of $50,629,855.88, for a total monetary damage claim of $63,978,648.95." Compl. ¶ 32. At trial in February 2005, Daewoo's project manager, J.W. Kim, who had certified the claim, testified that the claim was for nearly $64 million.[4] The government itself thought Daewoo's certified

---

[3] See, e.g., Teg-Paradigm Envtl., Inc. v. United States, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When a provision in a contract is susceptible to more than one reasonable interpretation, it is ambiguous, and we may then resort to extrinsic evidence to resolve the ambiguity." (citations omitted)); 11 Richard A. Lord, Williston on Contracts § 30:7 (4th ed. 1999) ("Where a written contract is ambiguous . . . the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning." (footnotes omitted)). The parties' own construction of an ambiguous written instrument is important when determining its meaning. See DDB Techs., L.L.C. v. MLB Advanced Media, L.P., 517 F.3d 1284, 1292 (Fed. Cir. 2008); 11 Richard A. Lord, Williston on Contracts § 32:14 (4th ed. 1999) ("[T]he parties' own practical interpretation of the contract—how they actually acted, thereby giving meaning to their contract during the course of performing it—can be an important aid to the court.").

[4]    Q.    Mr. Kim, you certified the claim to the U.S. Government where Daewoo was asking the government to pay Daewoo over $60 million, right?
       A.    We—yeah, I certified over 60 million, yeah.
       . . . .
       Q.    This was not a $13 million claim and we'll submit another claim later for our future damages, right? It was a $63 million claim.
       A.    Yes.

Tr. 9431:9-13, 9544:1-4, Feb. 25, 2005.

claim was for $64 million, and after it received the certified claim in March 2002, it informed Daewoo's bonding company in June 2002 that Daewoo had filed a request for equitable adjustment with the government for $64 million.

The contrary evidence includes the testimony of J.W. Kim, who, after testifying repeatedly that he had certified the claim for $64 million, later attempted to recant and testified that he had certified only $13 million. However, the Court of Federal Claims found this revised testimony, and the related testimony of other witnesses given after J.W. Kim's attempted recantation, not to be credible. See Daewoo Eng'g, 73 Fed. Cl. at 570. We review witness credibility determinations made by the trial court under a highly deferential standard. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985); UMC Electronics Co., 249 F.3d at 1340. There is no basis for rejecting the Court of Federal Claims' credibility findings.

We conclude that the Court of Federal Claims did not err in concluding that Daewoo submitted a certified claim for $64 million.

B.

We next address Daewoo's theory that the Court of Federal Claims erred in finding that the $50.6 million portion of the certified claim, the amount of claimed future costs, was fraudulent and in assessing a penalty in that amount.[5]

---

[5]    Here the government retained Cotton & Company ("Cotton") as a certified fraud examiner. Cotton determined that certain specific items in the incurred costs portion of Daewoo's certified claim, including duplicate costs, overstated equipment costs, and overstated overhead rates, were fraudulent. The Court of Federal Claims agreed. See Daewoo Eng'g, 73 Fed. Cl. at 592, 596. In light of our disposition, we need not address Daewoo's challenges to these determinations.

The Court of Federal Claims did not find that Daewoo's theories of the government's breach of the contract—based on alleged defective specifications, failure to disclose superior knowledge, and impossibility—were fraudulent (though it ultimately found these theories to be without merit). Rather, the Court of Federal Claims found that Daewoo's $50.6 million projected cost calculation was fraudulent. That calculation assumed that the government was responsible for each day of additional performance beyond the original 1080-day contract period, without even considering whether there was any contractor-caused delay or delay for which the government was not responsible. The calculation then simply assumed that Daewoo's current daily expenditures represented costs for which the government was responsible.[6] Daewoo apparently used no outside experts to make its certified claim calculation, and at trial made no real effort to justify the accuracy of the claim for future costs or even to explain how it was prepared. See Daewoo Eng'g, 73 Fed. Cl. at 573, 582. Indeed, Daewoo's damages experts at trial treated the certified claim computation as essentially worthless, did not utilize it, and did not even bother to understand it. See id. at 573. The Court of Federal Claims pointed out that Daewoo's claim preparation witnesses inconsistently referred to and interchanged actual, future, estimated, calculated and planned costs. See id. at 572, 574-76. The court found that J.W. Kim, who certified the claim, gave

---

[6] Daewoo stated that it calculated the $50.6 million in projected costs by using its own weather parameters, rather than those supplied by the government during the bidding period, to re-calculate the number of days needed to complete the contract as 2008 rather than 1080 days. Certified Claim at 32, 54. Daewoo next calculated that 153 of the additional 928 days had occurred before January 1, 2002, and that the remaining 775 were projected to occur after December 31, 2001. Id. at 66. Daewoo stated that it averaged "the last three months of costs, October, November and December 2001" and then applied that monthly average to the projected additional 25.5 months (775 days) "as an estimate for costs extending into the future." Id.

false testimony.  Id.  at 569-70, 584 n.63.  The court also found that the testimony of Daewoo's witness Mr. Richardson regarding the calculation of Daewoo's certified claim "left no doubt that [Daewoo's] case was unsupportable and was pursued by Daewoo with fraudulent intent."  Id. at 573 n. 45.

The Court of Federal Claims ultimately found that the certified claim was simply a "negotiating ploy," and that Daewoo "did not honestly believe that the Government owed it the various amounts stated when it certified the claim."  Id. at 588, 590.  The court concluded,

> [T]he extra $50 million claim was a means to get the Government's attention, and to show the Government what would happen if it did not approve the new compaction method that plaintiff wanted.  Daewoo did not file that part of the claim in good faith; it was not an amount to which plaintiff honestly believed it was entitled. Whether Daewoo wanted the money or wanted the Government's attention, $64 million was not an amount the Government owed plaintiff at the time of certification, and plaintiff knew it.

Id. at 596.[7]  On appeal Daewoo makes virtually no effort to show that the Court of Federal Claims' findings of fraud are clearly erroneous.

Daewoo argues, however, that the findings of the Court of Federal Claims somehow must be set aside, because the court found that the claim was fraudulent in the amount only of $50.6 million rather than $64 million.  Daewoo argues that this is so

---

[7]  The Court of Federal Claims stated that "Daewoo's case against the United States is wholly without merit; its claims are fraudulent," Daewoo Eng'g, 73 Fed. Cl. at 550; "[t]he certified claim itself was false or fraudulent and plaintiff knew that it was false or fraudulent," id. at 585; "[Daewoo] did not honestly believe that the Government owed it the various amounts stated when it certified the claim," id. at 590; "[Daewoo's] claim is fraudulent," id. at 595.

because the government had attempted to prove the fraudulence of both the past and future damages "based on the same theory." Pl.-Appellant's Reply Br. at 10.

Daewoo's premise is incorrect. The Court of Federal Claims found Daewoo's entire $64 million calculation likely was fraudulent,[8] but concluded that a penalty of only $50.6 million should be assessed because the remaining $13 million incurred cost claims could have been ultimately supported by alternative methodologies which, while incorrect, would not necessarily have been fraudulent. Daewoo Eng'g, 73 Fed. Cl. at 595-96. The court found that the "'part of [the] claim' that is fraudulent without question is $50,629,855.88." Id. at 595 (alteration in original). The court's decision to award only $50.6 million as a penalty does not undermine its factual findings.

Finally, Daewoo appears to argue that a claim can be fraudulent only if it rests upon false facts rather than on a baseless calculation. We disagree. Here Daewoo certified, as required by 41 U.S.C. § 605(c)(1), that "the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable." Certified Claim at 7. By certifying a claim for damages in the amount of $64 million, Daewoo represented that the claim was made "in good faith." It is well established that a baseless certified claim is a fraudulent claim. For instance, the First Circuit has held that if a party knows that its claim that it is entitled to funds under a letter of credit "has no plausible or colorable basis," then the

---

[8]  The Court of Federal Claims held that the government proved that Daewoo "did not believe that the Government owed it $64 million as a matter of right" and that "Daewoo's entire $64 million claim was an attempt to defraud the United States." Daewoo Eng'g, 73 Fed. Cl. at 585. The court also stated that "[w]e suspect that Daewoo's entire claim is fraudulent." Id. at 595-96.

party's "effort to obtain the money is fraudulent." Itek Corp. v. First Nat'l Bank of Boston, 730 F.2d 19, 25 (1st Cir. 1984); see also Ward Petroleum Corp. v. Fed. Deposit Ins. Corp., 903 F.2d 1297, 1301 (10th Cir. 1990).

Congress specifically enacted the fraud provision of the Contract Disputes Act "out of concern that the submission of baseless claims contribute[s] to the so-called horsetrading theory where an amount beyond that which can be legitimately claimed is submitted merely as a negotiating tactic." S. Rep. No. 95-1118, at 20 (1978), as reprinted in 1978 U.S.C.C.A.N. 5235, 5254. We have noted that the "purpose of the certification requirement is to trigger[ ] a contractor's potential liability for a fraudulent claim under section 604 of the [Contract Disputes] Act." Fischbach & Moore Int'l Corp. v. Christopher, 987 F.2d 759, 763 (Fed. Cir. 1993) (internal quotation marks omitted) (first alteration in original).

Daewoo also contends that the $50.6 million penalty was unconstitutional under the Eighth and Fifth Amendments. This assertion is meritless. Under the Eighth Amendment, a penalty is unconstitutional only if it is disproportionate to the possible harm resulting from the conduct. See United States v. Bajakajian, 524 U.S. 321, 334 (1998) ("[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."). Here the potential harm was Daewoo's securing a $50.6 million payment from the government; under these circumstances a $50.6 million penalty is not disproportionate. The fact that the fraud may have been unlikely to succeed does not suggest that a penalty is inappropriate. The same standard and result would follow under the Fifth Amendment, if the penalty here were to be treated as equivalent to punitive damages (an issue we do not decide).

See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 581 (1996) (noting that in a due process challenge to a punitive damages award, "the proper inquiry is whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred" (internal quotation marks omitted)).

II

Daewoo also argues that the $10,000 penalty under the False Claims Act was not supported.

Under the False Claims Act, "[a]ny person who . . . knowingly presents" to the government "a false or fraudulent claim for payment or approval" "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains." 31 U.S.C. § 3729(a). "Knowingly" is defined as (1) "actual knowledge," (2) acting "in deliberate ignorance of the truth or falsity" of information, or (3) acting "in reckless disregard of the truth or falsity" of information; no proof of specific intent to defraud is required." Id. § 3729(b). The government must establish a violation of the False Claims Act by a preponderance of the evidence. Id. § 3731(c); Commercial Contractors, 154 F.3d at 1362.

To support its conclusion that Daewoo violated the False Claims Act, the Court of Federal Claims cited the findings underlying Daewoo's liability under the Contract

Disputes Act. See Daewoo Eng'g, 73 Fed. Cl. at 585.[9] A certified claim may be a source of liability under both the Contract Disputes Act and the False Claims Act. See UMC Electronics, 249 F.3d at 1339-40; Commercial Contractors, 154 F.3d at 1375. The Court of Federal Claims did not err in concluding that Daewoo violated the False Claims Act. Because the court did not find that the government incurred damages from Daewoo's false claim, the court properly assessed only the statutory penalty.

III

Finally we turn to the contractor's affirmative claims listed in its complaint.

Daewoo's complaint alleged that the government owed it money damages and an increase in the contract's performance time, due to defective specifications in the contract's weather and embankment clauses, breach of the government's duty to disclose its superior knowledge, and the impossibility of performing the contract. See Compl. ¶¶ 34-76.

Under 28 U.S.C. § 2514, "[a] claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof." Section 2514 further states that "[i]n such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture." To prevail under § 2514, the government must "establish by clear and convincing evidence that the contractor knew that its submitted claims were false, and

---

[9] Daewoo asserts that the Court of Federal Claims improperly applied a negligence standard when holding that Daewoo violated the False Claims Act, but in fact the court recited the correct standard and stated that "[t]he Government proved by any standard that Daewoo's $64 million claim was fraudulent." Daewoo Eng'g, 73 Fed. Cl. at 585.

that it intended to defraud the government by submitting those claims." <u>Commercial Contractors</u>, 154 F.3d at 1362.

Unlike the antifraud provision of the Contract Disputes Act, 41 U.S.C. § 604, under which a contractor may incur liability only for the unsupported part of a claim, forfeiture under 28 U.S.C. § 2514 requires only part of the claim to be fraudulent. For instance, in <u>Young-Montenay, Inc. v. United States</u>, we held that because a contractor had submitted a claim to the government for $153,000 when the contractor knew the government was liable only for $104,000, such a knowingly false claim forfeited the contractor's later damages claim against the government under the contract. 15 F.3d 1040, 1042-43 (Fed. Cir. 1994).

The Court of Federal Claims held that the government "showed by clear and convincing evidence that [Daewoo] knowingly presented a false claim with the intention of being paid for it" and thus that Daewoo's claims against the government were forfeited under § 2514. <u>Daewoo Eng'g</u>, 73 Fed. Cl. at 584. Daewoo itself concedes that if the $50.6 million Contract Disputes Act penalty is correct, then the forfeiture of its $13 million is also correct. Since we have upheld the $50.6 million award, we also uphold the forfeiture under § 2514.[10]

AFFIRMED

---

[10] In light of our disposition, we need not address the alternative holding of the Court of Federal Claims rejecting Daewoo's claims on the merits. <u>See</u> <u>Commercial Contractors</u>, 154 F.3d at 1362 (affirming the holding of the Court of Federal Claims that a contractor's claims were forfeited under § 2514 without reaching the contractor's affirmative claims). We also need not address the finding of the Court of Federal Claims that Daewoo fraudulently induced the government to award the road construction contract, since, as the court correctly concluded, fraudulent inducement in this case causes "[n]o additional monetary damages [to] apply." <u>See</u> <u>Daewoo Eng'g</u>, 73 Fed. Cl. at 588.

## COSTS

No costs.