# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-6125

WAYNE CALHOUN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided January 9, 2024)

*Megan M. Ellis*, then of San Diego, California, currently of West Warwick, Rhode Island, was on the brief for the appellant.

*Catherine C. Mitrano,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel; and *Carrie E. Ferrando,* all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and TOTH, *Judges*.

BARTLEY, *Chief Judge*: Veteran Wayne Calhoun appeals through counsel the portion of a September 10, 2021, Board of Veterans' Appeals (Board) decision that denied entitlement to an effective date before January 1, 2016, for the award of a total disability evaluation based on individual unemployability (TDIU) due to service-connected disabilities. Record (R.) at 5-15. This appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

In February 2023, the Court directed the parties to file supplemental briefs addressing whether Mr. Calhoun's appeal, which stems from a supplemental claim filed within one year of an earlier Board decision and under the provisions of the Veterans Appeals Improvement and Modernization Act of 2017 (AMA), was a prohibited freestanding earlier effective date claim. This matter was subsequently referred to a panel of the Court to address the AMA issue.

As discussed below, the regulatory structure of the AMA expressly provides that an issue remains active—that is, a decision on the issue remains pending and does not become final, including for effective date purposes—when a claimant files a supplemental claim within one year of an adverse Board decision. Consequently, the Board had statutory authority to consider the

TDIU effective date issue in its September 2021 decision and the Court has authority to review the merits of the Board's determination that an earlier TDIU effective date was not warranted. And because the Court holds that the Board did not provide adequate reasons or bases for that determination, it will set aside the September 2021 Board decision and remand the matter for readjudication consistent with this decision. The remainder of the appeal will be dismissed.

## I. THE BOARD HAS STATUTORY AUTHORITY OVER CONTINUOUSLY PURSUED EFFECTIVE DATE APPEALS

### A. Facts Specific to Determining Board Authority

The agency of original jurisdiction (AOJ) first adjudicated entitlement to TDIU in a February 2021 rating decision, assigning an effective date of January 8, 2020. R. at 362-69. In March 2021, Mr. Calhoun filed a Notice of Disagreement (NOD) on VA Form 10182, seeking direct review by the Board of the TDIU effective date, among other issues. R. at 282.

Also in March 2021, the AOJ found that there was clear and unmistakable error (CUE) in the assignment of the TDIU effective date and revised that portion of the decision to reflect a January 1, 2016, effective date. R. at 254-61. That same month, Mr. Calhoun filed a VA Form 10182 NOD with the effective date assigned in that decision, as well. R. at 229.

In an April 2021 decision, the Board, among other things, denied entitlement to an effective date before January 1, 2016, for TDIU. R. at 181-200. The following month, in May 2021, Mr. Calhoun filed a supplemental claim disagreeing with the Board's April 2021 TDIU effective date decision. R. at 143-44. He did not, at that time, appeal the matter to the Court. Later that month, the AOJ issued a decision denying an earlier effective date for TDIU based on Mr. Calhoun's supplemental claim. R. at 98-101. That same month, Mr. Calhoun filed an AMA NOD with the May 2021 rating decision, electing the evidence submission option. R. at 50.

In the September 2021 decision on appeal, the Board readjudicated the issue of entitlement to TDIU before January 1, 2016. R. at 10-15. And by addressing the matter of entitlement to an earlier TDIU effective date on the merits, the Board implicitly found that it had authority to consider that issue—that is, that it was not improperly adjudicating a prohibited freestanding effective date claim. Whether the Board erred in doing so is the question requiring a precedential decision from the Court.

2

B. Analysis

As noted above, on February 7, 2023, the Court requested that the parties provide supplemental briefing discussing whether Mr. Calhoun's May 2021 supplemental claim, filed under the AMA system, constituted a freestanding earlier effective date claim. The Court took this action because it is well established that the Board lacks the authority to review such a claim, which occurs when a claimant files a claim seeking an earlier effective date after the decision assigning that effective date has become final (and is not pursuing one of the exceptions to finality). *Rudd v. Nicholson*, 20 Vet.App. 296, 299 (2006). If the matter before the Court today involves a freestanding earlier effective date claim, the Board lacked authority to adjudicate the matter, and the proper remedy is for the Court to vacate the Board decision and dismiss the appeal seeking an earlier TDIU effective date. *See id*. at 300. The Court will set the stage by reviewing some of the differences between the legacy appeal system and the AMA, particularly as regards the concept of finality and a claimant's options following a Board decision.

Appeals under the legacy system traversed along a single pathway. Legacy claimants unsatisfied with an initial decision from the AOJ had a year to file an NOD, which triggered VA's obligation to produce a Statement of the Case (SOC). 38 U.S.C. § 7105 (a), (b)(1) (2001). Following issuance of the SOC, claimants generally had 60 days to file a Substantive Appeal, triggering certification to and review by the Board. 38 U.S.C. § 7105(d)(3) (2001); *see also* 38 C.F.R. § 20.302(b) (2018) ("[A] Substantive Appeal must be filed within 60 days from the date that the [AOJ] mails the [SOC] to the appellant, or within the remainder of the 1-year period from the date of mailing of the notification of the determination being appealed, whichever period ends later."). And, following an unfavorable Board decision, claimants generally had 120 days to file a Notice of Appeal (NOA) with the Court. 38 U.S.C. § 7266.[1] Finality was achieved under the legacy system when the time allotted for the next action in the appeal chain expired without action by the claimant or a claimant had exhausted their options for review by a higher tribunal. Once a decision became final, there was no opportunity for readjudication by the AOJ unless a claimant sought to reopen the claim or to invoke one of the relatively narrow exceptions to finality.

But under the legacy system, claimants may not seek to reopen final effective date determinations. Therefore, once an effective date decision became final in the legacy system, that

---

[1] And, of course, claimants could further appeal an unfavorable decision from this Court to the U.S. Court of Appeals for the Federal Circuit.

decision was not subject to readjudication absent an assertion of clear and unmistakable error, an order from the Chairman granting reconsideration of a Board decision, or the Board's sua sponte correction of obvious error. *See Rudd*, 20 Vet.App. at 299-300; *DiCarlo v. Nicholson*, 20 Vet.App. 52, 56 (2006).

This was so because, according to the version of the statute then in effect, unless otherwise provided

> the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a) (2012). Therefore, an effective date claim reopened after a final adjudication could, under the version of section 5110(a) then in effect, have an effective date no earlier than the date of the claim to reopen, which eliminates from the slate of possibilities the award of an effective date earlier than that awarded in the initial (now final) decision. *Rudd*, 20 Vet.App. at 299. For example, if a final decision from 2000 assigned an effective date in 1999, and a claimant filed a claim to reopen the initial effective date decision in 2005, under the legacy version of section 5110(a), the earliest possible effective date would be the date VA received the claim to reopen in 2005, several years later than the effective date already assigned. Accordingly, "freestanding" claims for an earlier effective date under the legacy system are prohibited because the only way for them to result in the actual award of an earlier effective date would be to compromise the rule of finality. *Leonard v. Nicholson*, 405 F.3d 1333, 1337 (Fed. Cir. 2005).

Applying the process to a hypothetical legacy claimant, if that claimant was dissatisfied with an effective date assigned by the AOJ, he or she could file an NOD. If they were dissatisfied with the outcome of the subsequently issued SOC, they could file a Substantive Appeal. And if the resulting Board decision was not fully favorable, their sole option for further review within the ordinary decision review process was to file an NOA seeking review by the Court. If they did not elect to file an NOA, or if the Court's (or any higher tribunal's) review was not favorable, the Board decision became final on that issue and the effective date matter was not subject to readjudication unless the claimant pursued one of the exceptions to finality, such as CUE or reconsideration. Any subsequent claim seeking an earlier effective date was considered a prohibited freestanding effective date claim not subject to further adjudication. *See Rudd*, 20 Vet.App. at 299.

The AMA system transformed the single appeal pathway of the legacy system into an array of three procedural lanes from which claimants may choose. *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1119 (Fed. Cir. 2021) (citing 38 U.S.C. § 5104C(a)(1)). Within one year after the AOJ issues a decision, claimants may file one of the following: (1) a request for higher-level review of that decision; (2) a supplemental claim; or (3) an NOD to directly appeal to the Board. *See* 38 U.S.C. §§ 5104C(a)(1)(A)-(C), 5104B, 5108, 7105; *Mil.-Veterans Advoc.*, 7 F.4th at 1117, 1119. And while "claimants may use only one lane at a time," *Mil.-Veterans Advoc.*, 7 F.4th at 1119 (citing 38 U.S.C. § 5104C(a)(2)(A)), "nothing can prohibit [a] claimant from pursuing each administrative review option in succession," *id*. at 1134 (citing 38 U.S.C. § 5104C(a)(2)(B)).

In addition to providing additional post-decision review options, the AMA introduced statutory language referencing a "continuously pursued" claim. And in accordance with that concept, section 5110 was revised to allow for an effective date as early as the initial application for benefits whenever the claimant continuously pursues a claim by filing, either alone or in succession,

> (A) A request for higher-level review under section 5104B of this title on or before the date that is one year after the date on which the agency of original jurisdiction issues a decision.
>
> (B) A supplemental claim under section 5108 of this title on or before the date that is one year after the date on which the agency of original jurisdiction issues a decision.
>
> (C) A notice of disagreement on or before the date that is one year after the date on which the agency of original jurisdiction issues a decision.
>
> (D) A supplemental claim under section 5108 of this title on or before the date that is one year after the date on which the Board of Veterans' Appeals issues a decision.
>
> (E) A supplemental claim under section 5108 of this title on or before the date that is one year after the date on which the Court of Appeals for Veterans Claims issues a decision.

38 U.S.C. § 5110(a)(2). In other words, the finality of an AMA benefits determination is forestalled when a claim is continuously pursued—that is, whenever the claimant elects one of the three review lanes within 1 year after an AOJ decision or files a supplemental claim within 1 year after a decision by the Board or the Court. Accordingly, an AMA decision does not become final until the 1-year period after a decision by the AOJ, the Board, or the Court has expired without an action in accordance with section 5110(a)(2) by the claimant.

Returning to our hypothetical claimant, under the AMA system if that claimant is dissatisfied with the benefits effective date assigned by the AOJ and continuously pursues the claim until receiving an unfavorable Board (or Court) decision, the claimant has the option *not available to legacy claimants* of filing a supplemental claim within 1 year of that Board (or Court) decision and potentially securing an effective date as early as the date of the filing of the initial claim.

As noted above, the Court requested supplemental briefing from the parties because it has not previously addressed the interplay between *Rudd* and *Leonard* and the "continuously pursued" AMA statutory language. This is relevant in Mr. Calhoun's case because he does not appeal directly from the first April 2021 Board decision denying an earlier TDIU effective date but from a September 2021 Board decision that issued after he filed a timely supplemental claim in May 2021. Thus, while his claim has been continuously pursued as provided for in section 5510(a)(2)(D), the question before the Court is whether the April 2021 Board decision, as the first—and unappealed—Board decision to address the TDIU effective date, is considered final for the purpose of applying *Rudd* and *Leonard*, as it would have been under the legacy system when claimants were not permitted to file supplemental claims following Board decisions. If the April 2021 Board decision is final with respect to the TDIU effective date, Mr. Calhoun's May 2021 supplemental claim would be a prohibited freestanding earlier effective date claim that the Board should have dismissed in its September 2021 decision.

In their supplemental briefs, the parties agree that, under the AMA, a continuously pursued claim—including one seeking an earlier effective date—is not final and does not implicate *Rudd*, *Leonard*, or related caselaw. Mr. Calhoun notes that he has continuously pursued, in accordance with the AMA, his appeal seeking an earlier effective date for TDIU since it was initially awarded. Appellant's Supplemental Br. at 3-4.[2] And, he reasons, because the AMA permits the continuous pursuit of issues denied by the Board, his May 2021 supplemental claim seeking an earlier TDIU effective date is not a freestanding earlier effective date claim. *Id*. at 4.

The Secretary concurs that Mr. Calhoun's May 2021 supplemental claim "does not constitute a freestanding earlier effective date claim, as it was part of his continuous pursuit of the issue" as permitted under the AMA, which "distinguishes this particular case from *Leonard* and

_____

[2] Mr. Calhoun filed an amended supplemental brief to correct a formatting error. All citations are to the amended supplemental brief.

6

*Rudd*." Secretary's Supplemental Br. at 1. The Secretary notes that, under the AMA, supplemental claims serve two functions: as part of the continuous pursuit of a claim when filed within 1 year of a qualifying prior adjudication and, when filed outside that 1-year period, as something similar to a request to reopen a prior final decision under the legacy system. *Id*. at 2. And while the second function might implicate *Rudd* and *Leonard*, the first does not. *Id*. at 2-3.

The Court agrees with the parties. Under the legacy system, *Rudd* and *Leonard* barred freestanding earlier effective date claims because they were impermissible attempts to overcome the finality of a prior decision. *Leonard*, 405 F.3d at 1337 (holding that allowing freestanding earlier effective date claims would "vitiate the rule of finality"); *Rudd*, 20 Vet.App. at 300 (same); *see also Cook v. Principi*, 318 F.3d 1334, 1339 (Fed. Cir. 2002) (holding that, because Congress explicitly provided certain exceptions to the rule of finality, it did not intend to allow other exceptions). But as discussed above, the revised version of section 5110 under the AMA includes the concept of the continuously pursued claim; expressly provides that claims are continuously pursued when a supplemental claim is filed within 1 year of a Board or Court decision; and directs that, when a claim is continuously pursued, the effective date of an award may be as early as the date the claim was initially filed. 38 U.S.C. § 5110(a)(1), (2)(D).[3] Thus, continuously pursued AMA claims are, as the term suggests, continuously pursued—that is, they have not yet become final. And it logically follows that claimants who continuously pursue an earlier effective date are not seeking to overcome or vitiate the finality of a prior decision because there is not yet a final decision; *Rudd* and *Leonard* are simply not for consideration.[4]

As for Mr. Calhoun, the parties agree, and the record indicates, that following the initial February 2021 AOJ decision granting TDIU and assigning a January 8, 2020, effective date and the March 2021 AOJ decision revising the TDIU effective date to January 1, 2016, based on CUE, R. at 254-61, 362-69, Mr. Calhoun filed timely NODs with the assigned effective dates, R. at 229, 282; the Board issued an unfavorable decision in April 2021, R. at 189-200; and Mr. Calhoun filed

---

[3] This was intentional, to accommodate both the AMA goal of streamlining the appeals system and more quickly resolving appeals by eliminating 38 C.F.R. § 3.156(b) and closing the record after an initial decision issues, while still permitting claimants to submit new and relevant evidence for consideration by filing a supplemental claim. *See* 84 Fed. Reg. 138, 142-144 (2019) (final rule) (addressing comments regarding the elimination of § 3.156(b) for AMA claims).

[4] Whether *Rudd* and *Leonard* apply in the AMA system when a supplemental claim is filed more than 1 year after the last prior adjudication, which the Secretary asserts is analogous to a legacy system claim to reopen, Secretary's Supplemental Br. at 2, is beyond the scope of this decision.

a supplemental claim in May 2021, R. at 143-44. Because Mr. Calhoun sought further review within 1 year of each adjudication, under the AMA his May 2021 supplemental claim following the April 2021 Board decision was part of his continuously pursued appeal of the TDIU effective date and not a freestanding earlier effective date claim. Accordingly, the Board did not err in implicitly finding that it had authority to consider the merits of the effective date appeal and the Court may likewise consider the merits of that appeal, which we do below. *See* 38 U.S.C. § 7261(a)(3)(C) (requiring the Court to set aside Board decisions issued in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right).

## II. TDIU EFFECTIVE DATE

### A. Merits Facts

Mr. Calhoun served on active duty with the U.S. Air Force from October 1965 to February 1969. R. at 3144. In August 2008, he was diagnosed with bronchioloalveolar adenocarcinoma in the left lung. R. at 3014-17.

In January 2011, Mr. Calhoun filed a claim for service connection for lung cancer, R. at 3002-11, and he underwent a VA examination in August 2011, R. at 2947-51. The VA examiner documented the veteran's report that he had a little breathing difficulty during exertion, R. at 2948, but opined that pulmonary function testing (PFT) was normal and that there was "no objective evidence of active disease," R. at 2950. In a September 2011 rating decision, the AOJ granted service connection for the residuals of Mr. Calhoun's lung cancer—characterized as left lung, status-post resection with residual scar—and assigned a 0% evaluation. R. at 2940-42.

In May 2012, Mr. Calhoun contacted VA by phone and requested that his claim be reopened. R. at 2929. He underwent a VA examination in July 2012, R. at 2897-913, and the examiner documented the veteran's report that he "experiences a shortness of breath at rest and with any exertion," but opined that there was "no objective evidence of active lung cancer." R. at 2899. The examiner further indicated that there were no residual conditions or complications resulting from lung cancer or treatment, R. at 2909, that a mild restrictive defect seen on PFT was likely related to obesity, R. at 2911, and that the lung disease would not affect Mr. Calhoun's ability to work. R. at 2912.

In an August 2012 rating decision, the AOJ continued the 0% evaluation for Mr. Calhoun's left lung condition, R. at 2891-93, and Mr. Calhoun filed a timely NOD, R. at 2874-75. In October

2014, Mr. Calhoun filed a claim seeking service connection for prostate cancer and obstructive sleep apnea (OSA). R. at 2806. In a February 2015 rating decision, the AOJ granted service connection for prostate cancer, assigning a 100% evaluation; a related surgical scar, assigning a 0% evaluation; and erectile dysfunction, assigning a 0% evaluation. R. at 2726-33. The AOJ granted special monthly compensation (SMC) based on loss of use of a creative organ, denied service connection for OSA, and assigned October 29, 2014, as the effective date for all grants. *Id*. Thus, at that time, Mr. Calhoun had a cumulative 100% evaluation based on a single disability with no other compensable disabilities. R. at 2733. However, beginning January 1, 2016, Mr. Calhoun's prostate cancer evaluation was reduced to 40%; he appealed that decision. *See* R. at 2186. Meanwhile, in September 2016, the AOJ issued an SOC continuing the 0% evaluation assigned for Mr. Calhoun's left lung condition. R. at 2546-73. In October 2016, Mr. Calhoun filed his Substantive Appeal. R. at 2530.

In December 2018, the Board issued a decision denying compensable evaluations for Mr. Calhoun's left lung condition, associated surgical scar, and erectile dysfunction; a higher level of SMC for loss of use of a creative organ; an effective date after January 1, 2016, for the reduction from 100% to 40% for prostate cancer; and an evaluation in excess of 40% for prostate cancer from January 1, 2016, to April 12, 2018. R. at 2176-93. The Board remanded the matter of service connection for OSA. *Id*.

In June 2019, Mr. Calhoun submitted a claim for service connection for aphonia as secondary to his service-connected left lung condition. R. at 2010-14. In an accompanying statement, he asserted that he acquired vocal cord paralysis after treatment for his left lung condition and that he can no long speak above a whisper. R. at 2002. In July 2019, Mr. Calhoun underwent a VA examination, R. at 1857-66, and was diagnosed with dysphonia, left vocal fold paresis, R. at 1859, chronic laryngitis, R. at 1860, and incomplete organic aphonia, R. at 1861. In January 2020, Mr. Calhoun filed a formal application for TDIU, asserting that he had been too disabled to work since March 2013. R. at 1738-40. In a May 2020 rating decision, the AOJ granted service connection for OSA and assigned a 50% evaluation, effective October 29, 2014. R. at 759-61.[5]

_____

[5] Although it is not clear from the portion of the May 2020 rating decision included in the record, the grant of service connection for OSA subsumed the previous grant of service connection for left lung, status post resection, and the combined disability was evaluated at 50% from October 29, 2014. *See* R. at 358-59.

In one of several February 2021 rating decisions, the AOJ granted service connection for incomplete aphonia with vocal cord damage, assigning a 10% evaluation from June 7, 2019, and a 60% evaluation from February 16, 2021. R. at 306-10. In a separate February 2021 rating decision, the AOJ granted entitlement to TDIU (and dependents' educational assistance (DEA) as a related benefit) from January 8, 2020. R. at 362-69. In March 2021, the AOJ found CUE in the prior effective dates assigned for TDIU and DEA, assigning instead a January 1, 2016, effective date for both. R. at 254-61. Thus, at that point, Mr. Calhoun had a 100% schedular rating from October 29, 2014, to January 1, 2016, and an award of TDIU from that point. *See* R. at 261.

In March 2021, Mr. Calhoun filed an AMA NOD on VA Form 10182, seeking direct review by the Board of several issues, including the TDIU effective date of January 2020 as determined in the February 2021 rating decision. R. at 282. That same month, he filed a separate AMA NOD from the March 2021 rating decision assigning an TDIU effective date in January 2016. R. at 229. In an April 2021 decision, the Board denied, as relevant here, an effective date before January 1, 2016, for TDIU, but granted an earlier effective date of January 5, 2011, for service connection for aphonia and entitlement to SMC at the housebound rate as of June 7, 2019. R. at 181-200.

In May 2021, Mr. Calhoun filed a supplemental claim on VA Form 20-0995 disagreeing with the portions of the April 2021 Board decision regarding the TDIU and SMC effective dates. R. at 143-44. Later that month, the AOJ issued a decision implementing an earlier SMC/housebound effective date of October 29, 2014, as directed by the Board, and denying an earlier effective date for TDIU based on Mr. Calhoun's supplemental claim. R. at 98-101. In that decision, the RO stated that Mr. Calhoun had been assigned a 60% evaluation for aphonia from January 5, 2011. R. at 99. And given that he had, from October 29, 2014, a 100% evaluation based solely on his prostate condition, and a separate 60% evaluation for aphonia, the RO found that he was statutorily entitled to SMC at the housebound rate from October 29, 2014. *Id*. That same month, Mr. Calhoun filed an AMA NOD with the TDIU effective date, electing the evidence submission option. R. at 50.

In June 2021, Mr. Calhoun submitted a private vocational assessment, R. at 33-42, wherein the evaluator opined that Mr. Calhoun had been unemployable due to service-connected aphonia since at least March 2013, R. at 39, and that the most relevant records for her assessment dated from June 29, 2015, through July 8, 2019. R. at 34-35. Based on a May 2021 telephone interview,

she documented Mr. Calhoun's reported symptoms and functional limitations as impaired verbal communication abilities and, as a result, impaired efficiency and performance. R. at 35. She acknowledged Mr. Calhoun's bachelor's degree and "solid skilled work history in technical writing," R. at 39, but opined that his "impaired ability to communicate effectively with others through speech precludes even sedentary work as all work involves at least occasional contact and communication with supervisors and co-workers," R. at 38.

In the September 2021 decision on appeal, the Board noted that Mr. Calhoun was working full time until March 2013, when he left his multi-decade employment as a Northrup Grumman technical writer; therefore, the applicable review period began March 1, 2013. R. at 10. The Board acknowledged that, from October 29, 2014, to December 31, 2015, Mr. Calhoun had a temporary 100% evaluation for prostate cancer and that, under *Buie v. Shinseki*, 24 Vet.App. 242, 254 (2011), a TDIU issue is not necessarily moot simply because a veteran has a 100% schedular evaluation because TDIU based on a separate disability may confer entitlement to SMC at the housebound rate. R. at 14-15. But in Mr. Calhoun's case, the Board found, he had already been granted SMC at the housebound rate from October 29, 2014, because of his separate 60% aphonia evaluation; therefore, the Board found moot any consideration of TDIU from October 29, 2014, to December 31, 2015. R. at 15. Finally, the Board determined that since Mr. Calhoun had been granted TDIU from January 1, 2016, *id*., the question at issue was whether Mr. Calhoun was entitled to TDIU from March 1, 2013, to October 29, 2014. *See* R. at 5.

As for TDIU entitlement during that time period, the Board considered the July 2012 VA examiner's report, including the veteran's report of shortness of breath and the examiner's opinion that the left lung condition would not impact Mr. Calhoun's ability to work. R. at 11. The Board also considered private treatment records documenting an October 2012 fall and use of a CPAP machine in December 2013. R. at 11. The Board noted that the vocational consultant limited her assessment to the effect of aphonia on Mr. Calhoun's employment, *id*., and indicated specifically that her review was based on records from and after June 2015, outside the period on appeal. R. at 13. And, the Board noted, Mr. Calhoun was able to continue working from January 5, 2011, until March 2013, during which time he was evaluated at 60% for his aphonia. R. at 13. And, the Board found, VA and private medical records documenting minimal functional impairment do not support the vocational consultant's opinion. *Id*. Consequently, the Board afforded little probative weight to the vocational consultant's opinion. *Id*.

11

In addressing the matter of entitlement to an earlier TDIU effective date on the merits, the Board implicitly found that it had authority to consider that issue. Ultimately, the Board found that the evidence did not support a finding of entitlement to TDIU before January 1, 2016, and denied the claim. This appeal followed.

B. The Parties' Merits Arguments

As a preliminary matter, the parties do not dispute the Board's findings that the appeal period is from March 1, 2013, to October 29, 2014, and that *Buie* is not for consideration. *See* R. at 5, 10, 14-15. Accordingly, any argument with respect to those findings is waived, and the appeal as to those matters will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same).

Mr. Calhoun argues, among other things, that the Board provided inadequate reasons or bases for denying him an earlier TDIU effective date. Appellant's Br. at 5-12. He alleges that the Board stated that his functional capacity was limited without conducting a more specific assessment of his limitations—such as shortness of breath even at rest—and the occupations for which he is qualified, per *Ray v. Wilkie*, 31 Vet.App. 58, 73 (2019). *Id*. at 7-9. And he alleges that the Board improperly discounted the private vocational opinion for relying on post-appeal period medical records because the timing of those records does not necessarily "render them irrelevant or undermine the vocational opinion." *Id*. at 9. He further alleges that the Board should not have relied on the July 2012 VA examiner's opinion that his disability would not impact employment to discount the private vocation opinion because he was not service connected for aphonia in July 2012 and, therefore, the VA examiner did not contemplate the effects of that condition on employability. *Id*. at 10-11.

The Secretary asserts that the functional limitation analysis described in *Ray* "is only necessary if the evidence of record raises its potential applicability." Secretary's Br. at 6. Here, he asserts, the evidence of shortness of breath at rest was from a February 2021 VA examination and, therefore, lacked relevance to the current appeal period. *Id*. The Secretary also contends that the Board's determination that the private vocational opinion was entitled to minimal probative value was "within the Board's purview and does not lack adequate explanation." *Id*. at 8-9. And, the Secretary asserts, the Board properly relied on the July 2012 VA examiner's opinion because Mr. Calhoun's lay statements "are generally not competent to establish facts [that] require

12

specialized medical knowledge or expertise" and it is ultimately the Board's responsibility to determine employability. *Id*. at 9.

In reply, Mr. Calhoun reiterates that the Board should have considered his specific functional impairment, such as shortness of breath, hoarseness, and difficulty communicating, and that evidence from outside the appeal period is not inherently irrelevant, particularly to the extent that it addresses the functional impact of symptoms that he reported occurred during the appeal period. Reply Br. at 2-3. And, he notes, he is competent to report on observable symptoms and their impact because they are "within the scope of his personal experience." *Id*. at 3.

## C. Merits Analysis

The Court agrees with Mr. Calhoun that the Board's reasons or bases are inadequate.

Board determinations of the proper effective date for disability compensation, and whether TDIU is warranted, are findings of fact that the Court reviews under the "clearly erroneous" standard of review. *See Bowling v. Principi*, 15 Vet.App. 1, 6 (2001); *Evans v. West*, 12 Vet.App. 396, 401 (1999); *Hanson v. Brown*, 9 Vet.App. 29, 32 (1996); *see also* 38 U.S.C. § 7261(a)(4). "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The Board must support its findings on any material issue of fact and law with adequate reasons or bases. 38 U.S.C. § 7104(d)(1); *Pederson*, 27 Vet.App. at 286. To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for its rejection of material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). It must also discuss all provisions of law and regulation that are made "potentially applicable through the assertions and issues raised in the record." *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991); *see Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (requiring the Board to address all issues explicitly raised by the claimant or reasonably raised by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1335 (Fed. Cir. 2009).

As to the probative value assigned to the July 2012 VA examiner's opinion and the May 2021 private vocational assessment, the Board found that the private assessment opining that Mr. Calhoun has been unemployable since March 2013 has "little probative weight" because, among

13

other things, it was contradicted by the July 2012 VA examiner's opinion that Mr. Calhoun's left lung condition did not impact employability and because the private evaluator considered post-appeal-period medical records. R. at 13. But the Board found, and the parties do not contest, that the current appeal period began in March 2013. *See* R. at 5. And it is not clear from the Board's analysis why it relied on VA medical evidence from before the appeal period—when Mr. Calhoun was still employed and presumably less functionally impaired—but discounted the private assessment because it cited medical evidence from after the appeal period. Said another way, both examples date or cite evidence from outside the appeal period, and the Board failed to explain why one is entitled to probative value and the other is not.

Furthermore, Mr. Calhoun is correct that the July 2012 VA examiner did not consider his aphonia. Indeed, the record indicates that although his first of-record diagnosis of aphonia was July 2019, R. at 1861, he is service connected for that condition effective January 5, 2011, R. at 181-200. The July 2012 VA examiner diagnosed residuals of left lung cancer with no objective evidence of active disease, noted lay reports of shortness of breath, R. at 2899, and concluded that the diagnosed respiratory condition did not impact Mr. Calhoun's ability to work, R. at 2912. But the examiner did not discuss aphonia or its functional impacts, which is significant because VA has determined that at the time of that examination Mr. Calhoun had aphonia warranting a 60% evaluation. Thus, it is not clear to the Court, based on the Board's analysis, why it relied on the July 2012 VA examination report, which did not address the impact of a significantly disabling condition, as a better indicator of Mr. Calhoun's employability than the private vocational assessment.

Ultimately, the Board rejected the private vocational assessment at least in part because it relied on evidence from outside the appeal period yet itself relied on different evidence from outside the appeal period—that on its face did not consider the full scope of Mr. Calhoun's disability—to deny an earlier TDIU effective date. And it did so without explaining why; accordingly, judicial review is frustrated. And when judicial review is frustrated, the Board's reasons or bases are inadequate, *Pederson,* 27 Vet.App. at 286, and remand is warranted, *Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

Turning to Mr. Calhoun's *Ray* argument, when determining whether a veteran can secure and follow a substantially gainful occupation, the Board is to use the framework provided by this Court in *Ray*. In *Ray*, the Court interpreted being "unable to secure and follow substantially gainful employment" to include both economic and noneconomic factors. 31 Vet.App. at 73. The Court did not create a checklist of factors that must be considered by the Board; rather, it instructed that discussion of a particular factor is necessary if it is raised by the evidence. *Id*.

Here, the Board discussed Mr. Calhoun's prior work experience and education, the July 2012 VA examination report, private treatment records from October 2012 and December 2013, the May 2021 private vocational assessment, including Mr. Calhoun's lay reports of functional impairment relayed during the private assessment, and the fact that eventually he was granted a 60% evaluation for aphonia beginning at a time when he was still employed. R. at 10-13. In its substantive analysis, which consists of two paragraphs, the Board discounted the private assessment in the first paragraph and concluded that the evidence does not support an earlier TDIU effective date in the second, finding that, although Mr. Calhoun "was limited in his functional capacity[, the evidence] does not show that his service-connected conditions prevented him from obtaining or maintaining substantially gainful employment." R. at 13. The Board also appeared to discount the 60% evaluation for aphonia as irrelevant because "the [v]eteran continued to work until March 2013." *Id*. The Board did not elaborate on what it found his functional capacity limits to be.

The Secretary asserts that this brief analysis is all that is required here because no evidence of record raises the potentially applicability of any *Ray* factors. Secretary's Br. at 5-6. But the Court cannot evaluate the Board's analysis as to the proper TDIU effective date—to include whether discussion of any *Ray* factors was necessary—when it is not clear what the Board found Mr. Calhoun's impairment to be. For example, it appears that the Board gave significant weight to the July 2012 VA examination report prepared before Mr. Calhoun was diagnosed with aphonia and while he was still employed, before the period on appeal;[6] discounted the relevance of Mr. Calhoun's 60% aphonia evaluation because he was employed during a portion of the time he was granted that evaluation; and discounted the private vocational assessment entirely, to include Mr. Calhoun's lay reports of observable symptoms. R. at 13. It is not apparent what the Board found

---

[6] And, of course, the Court has already determined that the Board provided inadequate reasons or bases for its reliance on the July 2012 VA medical examination report.

Mr. Calhoun's functional capacity to be, other than "limited" but not "prevent[ing] him from obtaining or maintaining substantially gainful employment." *Id*. And without that finding from the Board, there is nothing for the Court to review on the matter. Again, judicial review is frustrated, and remand is warranted. *See Pederson*, 27 Vet.App. at 286; *Tucker*, 11 Vet.App. at 374.

## III. MOTION FOR ORAL ARGUMENT

As a final matter, on September 12, 2023, Mr. Calhoun filed a motion for leave to file out of time a motion for oral argument and included a copy of his proposed motion for oral argument. The Court will grant the September 12, 2023, motion for leave to file out of time a motion for oral argument and direct that the motion be filed as of that date. However, after reviewing the motion, and having determined that remand is warranted, the Court is not convinced that oral argument would materially assist in the disposition of this appeal and will deny the motion. *See Janssen v. Principi*, 15 Vet.App. 370, 379 (2001) (per curiam); *Mason v. Brown*, 8 Vet.App. 44, 59 (1995).

## IV. CONCLUSION

Upon consideration of the foregoing, Mr. Calhoun's September 12, 2023, motion for leave to file a motion for oral argument out of time is granted; the motion for oral argument is considered filed as of September 12, 2023; and the motion for oral argument is denied. The portion of the September 10, 2021, Board decision denying entitlement to an effective date before January 1, 2016, for the award of TDIU is SET ASIDE, and the matter is REMANDED for further development, if necessary, and readjudication consistent with this decision. The balance of the appeal is DISMISSED.